687 P.2d 1214

**STATE of Arizona, Appellee,**

v.

**Fred Jose PEREZ, Appellant.**

No. 5984.

Supreme Court of Arizona,
In Banc.

April 23, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Div., R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Michael G. Sullivan, Deputy Public

Defender, Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

GORDON, Vice Chief Justice:

On March 1, 1983, the Maricopa County Grand Jury returned an eleven count indictment charging appellant Fred Jose Perez with ten counts of armed robbery and one count of attempted armed robbery. On March 29, the state alleged the dangerous nature of each of the offenses and contended that the crimes charged in the indictment were committed by appellant while he was on parole. On April 19, the state further alleged prior felony convictions.

Pretrial hearings were held on June 7 pursuant to *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), and pursuant to appellant's motions to preclude admission of his prior convictions for impeachment purposes, Ariz.R. Evid. 609, and to sever the counts of the indictment, Ariz.R.Crim.P. 13.4. The trial court found that the out-of-court procedures did not taint the in-court identifications, that the state could use the appellant's prior misdemeanor conviction of "Fraudulent Return of a Document" and his prior felony conviction for distribution of heroin for impeachment purposes if the appellant decided to testify, and denied appellant's motion to sever.

The evidence introduced by the state at trial included (1) eyewitness accounts by ten of the victimized store clerks, by a deliverywoman making a delivery at one of the robbed stores, and by a customer at one of the robbed stores, (2) testimony by police investigators who prepared and administered photographic lineups to each victim following the respective robberies, (3) testimony by fingerprint experts who studied fingerprints lifted from a telephone stand outside one of the convenience stores after the victimized clerk told the police that while sweeping the area in front of the store entrance she had seen and heard the culprit on the phone at that stand before he entered the store and robbed it, and (4) numerous photographs, taken by cameras activated by removal from cash registers in several of the robbed stores of "bait bills," capturing the culprit in the act. A videotape of the February 13 robbery of the 7-Eleven on Northern and Nineteenth Avenues in Phoenix, viewed by that robbery's victim approximately eight times before he was shown a photographic lineup, was not introduced because the store owner had apparently reused the tape and thereby erased the relevant material. The fact that such a videotape had been made, viewed, and destroyed was in evidence as part of the victim's testimony at trial.

At the discussion on jury instructions, appellant requested the following *Willits* instruction: [1]

> "If you find that the plaintiff, the State of Arizona, has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against its interest."

The trial court denied the request based on its finding that the only evidence to which this could apply, the videotape, had never been in the state's possession. Appellant was found guilty of all counts as charged. Following his admission to the alleged prior convictions and waiver of his right to be sentenced at a later date, appellant was sentenced to life imprisonment on each count to be served concurrently and consecutive to his parole violation sentence.

A timely notice of appeal was filed. Appellant argues that the trial court erred in denying his motion to sever and in failing to give the requested *Willits* instruction. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031. The judgments and sentences are affirmed.

## MOTION TO SEVER

On May 23, 1983, appellant moved the court to sever the charges against him and grant separate trials for all but two of the eleven counts of the indictment. He claimed that because the offenses were

---

1. *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964).

joined only by virtue of Ariz.R.Crim.P. 13.-3(a)(1),[2] he was entitled as of right to severance pursuant to Ariz.R.Crim.P. 13.4(b).[3] The trial court denied his request. We find no error. In its answering brief, the state argues, for the first time, that appellant's motion to sever was untimely and that he therefore waived severance pursuant to Ariz.R.Crim.P. 13.4(c). We recognize that the motion to sever was not filed within the prescribed period, but we will not countenance that argument because the date upon which the motion was filed was the date set by the trial court as the final date for filing pretrial motions and there is no indication that the state was prejudiced by the extended period. A trial court may, in the interest of justice, extend the period in which a pretrial motion must be filed provided involved parties will not be prejudiced thereby.

▆▆▆ Generally, a trial court possesses broad discretion in the area of joinder and severance. *State v. Tipton*, 119 Ariz. 386, 581 P.2d 231 (1978). In *State v. Tipton, id.* at 388, 581 P.2d at 233, we recognized that

"[t]his discretion is limited by rule 13.4(b) which grants a defendant the 'right to sever offenses joined only by virtue of rule 13.3(a)(1)'—crimes of the same or similar character. Accordingly, if the charges were joined only because of the authority granted in rule 13.3(a)(1), the trial court erred in denying appellant's motion to sever the charges."

Examination of the facts and holding in *State v. Tipton* mandates the conclusion that appellant's claim is without merit. *State v. Tipton* involved a robbery and an attempted robbery of two self-service stations, committed at approximately the same time on consecutive evenings. On both occasions, Tipton initiated contact with the lone attendant, simulated the presence of a gun, and demanded money. Tipton claimed that rule 13.3(a)(1) was the sole ground for joinder, and the state asserted that joinder was proper pursuant to each of the standards provided in rule 13.3(a). We found that rule 13.3(a)(2) was inapplicable but that rule 13.3(a)(3) clearly applied. We said:

"[i]n order for two crimes to be classified as a common plan or scheme it is not necessary for the crimes to have been perpetrated in an absolutely identical manner [citation omitted], so long as the court perceives a visual connection between the two crimes. [citation omitted]."

*Id.* In the instant case, the trial court was faced with allegations that on February 7, 9, 10, 11, 12, 14, 17, 19, and twice on February 13, 1983, appellant, wearing a hat generally described as a fisherman's or golfer's hat, and possessing a gun, entered convenience stores throughout the Phoenix metropolitan area, including one Hi Value, three Circle K's, two Short Stops, two U-Totems, and two 7-Elevens, told the stores' attendants to place the money from the cash registers in folded brown paper bags that he supplied, warned them not to look at him, assured them that they would not

---

**2.** Ariz.R.Crim.P. 13.3 provides in relevant part:
"**a. Offenses.** Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
"(2) Are based on the same conduct or are otherwise connected together in their commission; or
"(3) Are alleged to have been a part of a common scheme or plan."

**3.** Ariz.R.Crim.P. 13.4 provides in relevant part:
"**a. In General.** Whenever 2 or more offenses or 2 or more defendants have been joined for trial, and severance of any or all offenses, or of any or all defendants, or both, is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance.
"**b. As of Right.** The defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1).
"**c. Timeliness and Waiver.** A defendant's motion to sever offenses or defendants must be made at least 20 days prior to trial or at the omnibus hearing and, if denied, renewed during trial at or before the close of the evidence. If a ground not previously known arises during trial, the defendant must move for severance at or before the close of the evidence. Severance is waived if a proper motion is not timely made and renewed."

be hurt, and ordered them to lie on the floor until he left. There is clearly a visual connection between each of the ten crimes with which the appellant was charged. Joinder was clearly warranted under rule 13.3(a)(3) and *State v. Tipton*. Appellant was not entitled as of right to severance and we find no abuse in the trial court's denial of his motion to sever.

## *WILLITS* INSTRUCTION

Appellant argues that he was entitled to a *Willits* instruction because the state was responsible for the destruction of a videotape recording of the February 13 robbery of the 7-Eleven on Northern and Nineteenth Avenues, and that the trial court's failure to give that instruction requires reversal because, had the instruction been given, he could have been acquitted. The state claims the trial court's refusal was correct because a *Willits* instruction is only required when evidence was destroyed while in the state's possession and the videotape at issue was never held by the state.

In *State v. Willits, supra*, the defendant was convicted of attempting to explode dynamite in a dwelling house with intent to injure, intimidate, or terrify a human being [former A.R.S. § 13–922]. Because significant pieces of the homemade blasting device found and confiscated by police officers who investigated the minor explosion that occurred, including the dynamite itself, had been turned over to and subsequently destroyed by the military, the defendant was unable to prove his defenses that the explosion was accidental and that the dynamite was in such a condition that it could not have exploded under any circumstances. Defendant requested the same instruction requested by appellant in the instant case. *See supra* at 1216. His request was denied.

On appeal to this Court, we reversed the conviction on the ground that, had the instruction been given, the jurors could have formed reasonable doubt as to the defendant's guilt. In explaining our decision, we said:

"[T]he rule permitting an inference [that the destroyed evidence would have proved facts against the state's interest] is not based on the notion that the destruction is motivated by a desire to conceal the truth. Evidence, of course, may be innocently destroyed without a fraudulent intent simply through carelessness or negligence or, as the case might have appeared to the jury here, an unwillingness to make the necessary effort to preserve it. In any event, the State cannot be permitted the advantage of its own conduct in destroying evidence that might have substantiated the defendant's claim regarding the missing evidence."

*State v. Willits, supra*, at 191, 393 P.2d at 279.

The state's assertion that a *Willits* instruction was unwarranted because the state never had possession of the destroyed evidence is unpersuasive. We will not allow entitlement to a *Willits* instruction to turn on a wholly technical, formal distinction. The state could have, and indeed should have, secured possession of the tape by request to the tape's owner or, if necessary, pursuant to a search warrant.[4] The evidence was obviously material and the police were aware of its existence. Indeed, the record indicates that several detectives viewed the tape at least a "couple days" before it was erased. Though the state does not have an affirmative duty to seek out and gain possession of potentially exculpatory evidence, the state does have a duty, in the interest of justice, to act in a timely manner to ensure the preservation of evidence it is aware of where that evidence is obviously material and reasonably within its grasp. *See* Ariz. R.S.Ct., Code of Professional Responsibility, Rule 29(a), DR 7–103(B); *see also* Model Code of Professional Responsibility EC

---

4. A.R.S. § 13–3912(4) provides that "[a] search warrant may be issued * * * [w]hen property or things to be seized consist of any item or constitute any evidence which tends to show that a particular public offense has been committed, or tends to show that a particular person has committed the public offense."

**464**

7–13 (1981). This rule is necessary to assure that the police are neither intentionally selective or elusive, nor careless, negligent, or lazy, in seizing and assuring the preservation of material evidence.

 We have previously held that where evidence which might have tended to exonerate the defendant is destroyed while in the state's possession, a defendant is entitled to a *Willits* instruction. *See State v. Hunter*, 136 Ariz. 45, 664 P.2d 195 (1983); *State v. Garrison*, 120 Ariz. 255, 585 P.2d 563 (1978). We hold today that where the state fails to act in a timely manner to ensure the preservation of evidence that is obviously material, and reasonably accessible, a defendant is entitled to a *Willits* instruction upon a showing that he or she was prejudiced thereby. In other words, where the state failed to procure obviously material evidence, the defendant must show actual prejudice before he or she can claim entitlement to a *Willits* instruction. Whether either showing has been made (i.e., the showing that the state failed to procure evidence it should have procured and the showing that the defendant was actually prejudiced thereby) is a question for the trial court; its decision to give or forego a *Willits* instruction will not be reversed absent a clear abuse of discretion.[5]

 Though the videotape, in the instant case, was obviously material, easily accessible, and available for seizure for at least a "couple of days" before it was erased, the appellant has failed to make the requisite showing of prejudice. He has presented no evidence to support his assertion that had the videotape been presented to the jury, he would have been acquitted of the February 13th robbery because the

tape would have proven his mistaken identity defense. In fact, the only evidence of the tape's probative value indicates that it would have inculpated rather than exonerated appellant. On direct examination, Kirk Beall, the victim of the videotaped robbery, testified that his recollection of what the robber looked like was "mostly from the videotape * * * because at the time I was getting robbed I was pretty— pretty shooken [sic] up." When asked whether the videotape appeared to be an accurate representation of the robbery, he answered affirmatively. On cross-examination, defense counsel challenged Mr. Beall's identification of the appellant but was unable to evoke any equivocation on it. If Mr. Beall's description of the tape was accurate, appellant *benefitted* from its destruction. Because there is not even a scintilla of proof that the appellant was prejudiced by the destruction of the videotape, the trial court did not abuse its discretion when it denied appellant's request that the jury be given a *Willits* instruction.[6] The fact that the trial judge came to the proper conclusion for the wrong reason is irrelevant. We are obliged to affirm the trial court's ruling if the result was legally correct for any reason. *State v. Dugan*, 113 Ariz. 354, 555 P.2d 108 (1976); *State v. Claxton*, 122 Ariz. 246, 594 P.2d 112 (App. 1979). The judgments and sentences are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

**5.** We realize that in some situations it may not be clear that a particular bit of evidence of which the state is aware is, or will prove to be, material. When the state fails to procure and/or assure the preservation of evidence that, though not obviously material, turns out to be material, it is up to the trial judge to determine if the state's failure to recognize its materiality was reasonable or not and to give a *Willits* instruction only where it finds the failure to have been unreasonable.

**6.** We note that the trial court's decision to forego a *Willits* instruction did not preclude defense counsel from arguing the substance of that instruction to the jury. Defense counsel apparently made a tactical decision to forego argument with respect to the tape, and cannot now claim that his client was prejudiced by the court's failure to provide an argument that he decided not to pursue.