797 P.2d 703
**The STATE of Arizona, Appellee,**

v.

**Jose D. SANCHEZ, Alexander Sanchez, Jose Arturo Portillo, and Deric Scott Stuck, Appellants.**

**Nos. 2 CA–CR 89–0100, 2 CA–CR 89–0103, 2 CA–CR 89–0113 and 2 CA–CR 89–0120.**

Court of Appeals of Arizona, Division 2.

March 22, 1990.

As Corrected March 27 and April 23, 1990.

Petition and Cross Petitions for Review Denied Oct. 2, 1990.

Robert K. Corbin, Atty. Gen., Phoenix by Eric J. Olsson, Tucson, for appellee.

LaBarge and Holmes by Emery K. La-Barge, Tucson, for appellant Jose D. Sanchez.

Baker Sipe, Campoy and Newman by Barry J. Baker Sipe, Tucson, for appellant Alexander Sanchez.

James S. Alexander, Tucson, for appellant Jose Arturo Portillo.

Harriette P. Levitt, Tucson, for appellant Deric Scott Stuck.

## OPINION

HOWARD, Judge.

Appellants were convicted by a jury of murder in the second degree pursuant to A.R.S. §§ 13–1104 and 13–710(A) and subsequently sentenced to a mitigated term of 12 years' imprisonment. For the reasons following, we affirm the convictions of appellants Alex Sanchez and Deric Stuck and remand the cases of appellants Jose Sanchez and Jose Arturo Portillo for a determination of voluntariness of their confessions.

## FACTS

On the night of the incident, appellant Deric Stuck was awakened when the victim, Michael Strong, and a companion broke into his apartment. The victim's companion fled with a radio belonging to Michael Waters, Deric's roommate. Thereupon Deric summoned assistance from the other three appellants, Jose and Alex Sanchez and Jose Arturo Portillo ("Arturo") from the Sanchez brothers' nearby apartment. When they arrived at Deric's apartment, the victim told appellants he would lead them to his companion so that they could recover the radio.

They proceeded to Jose's car to begin their search. During the ride, the victim cut Arturo's finger. A struggle ensued, the car stopped and the victim escaped. Appellants began chasing him and eventually cornered him in a fenced area located within a mobile home park.

Testimony of the appellants indicated that upon surrounding the victim, appellants punched and kicked him until he was no longer able to stand. Testimony was also elicited that rocks and bats were used in the beating of the victim. Before leaving the scene, Deric and Alex urinated on the moaning victim's body.

Appellants left the scene but returned later with Michael Waters. Upon their return, appellants testified that the victim was snoring, an effect which expert medical testimony concluded was consistent with fluid buildup in the lungs, or the resulting effects of the beating. No further

violence occurred at the second visit. Eye-witness testimony also established that a vehicle similar to the one identified at the first and second visits returned to the scene for a third time. During this period, only one person was seen looking around the fenced area and no further acts of violence were attested to.

Law enforcement officers found the body two days later. The autopsy revealed that the victim died within the first 24 hours of the beating. The fatal bleeding and swelling resulted from multiple blows to the head and face and the cause of death was determined to be blunt force trauma. In addition, the pathologist testified that the cause of the injuries was consistent with forces such as punching and kicking, not rocks and/or bats because the victim's skull was not fractured. Further, he also confirmed the presence of urine on the victim's shirt.

The subsequent investigation led police officers to the appellants and statements were elicited from each. They all gave similar accounts of the events which led up to the beating. The only difference among their statements concerned the responsibility for kicking the victim. Each appellant, except Arturo, admitted that he had punched the victim, but each denied kicking him. However, the statements confirmed that the victim had been kicked during the beating. Appellant Arturo's statement indicated that all appellants including him had kicked and punched the victim.

Appellants were subsequently arrested and indicted on first-degree murder and kidnapping charges. Upon motion by the defense, the court dismissed the kidnapping charge. A jury convicted appellants of second-degree murder and the court sentenced each to 12 years' imprisonment. This appeal followed.

### ISSUES

Appellants Jose and Arturo contend that the trial court erred in not making a specific finding on the voluntariness of the confessions given to the police. All appellants contend that the trial court erred by refusing to sever the trials, instruct the jury pursuant to *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964) and A.R.S. § 13–1204 on aggravated assault, and grant a mistrial because of prejudicial statements made by the prosecutor in closing argument. In addition, Jose, Alex and Deric contend that the trial court erred in refusing to dismiss the first-degree murder charge. Deric and Arturo assert error because an instruction pursuant to *Hash v. State,* 48 Ariz. 43, 59 P.2d 305 (1936) was not given. Finally, Arturo claims error because his request for a "heat of passion" manslaughter instruction was refused by the trial court.

### VOLUNTARINESS OF CONFESSION

Appellants Jose and Arturo first contend that the trial court erred by failing to make a specific finding on the issue of voluntariness of appellants' confessions. Appellants Alex and Deric do not join this argument.

■ A trial judge must make a specific finding as to the voluntariness of a confession given to police. *State v. Jessen,* 134 Ariz. 458, 657 P.2d 871 (1982); *State v. Marovich,* 109 Ariz. 45, 504 P.2d 1268 (1973); *State v. Dodd,* 101 Ariz. 234, 418 P.2d 571 (1966); *State v. Mileham,* 100 Ariz. 402, 415 P.2d 104 (1966). The denial of a motion to suppress can be tantamount to a finding of voluntariness where it is clear the trial court understood that the obligation to determine voluntariness of a confession was solely its own. See *State v. Mincey,* 115 Ariz. 472, 566 P.2d 273 (1977), reversed on other grounds, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (by deciding the confession could be used only for impeachment purposes, voluntariness was necessarily determined). After the suppression hearing, the court took the matter of voluntariness under advisement. No indication of the court's ruling was made other than by minute entry. The court denied Jose's motion by stating: "IT IS ORDERED that Defendant's Motion to Suppress Statements is DENIED." As to Arturo's motion, the court stated: "IT IS FURTHER ORDERED that defendant Portillo's motion to suppress statements is DENIED."

■ The record here is insufficient and we therefore remand this matter for a determination consistent with this opinion.

Assuming, arguendo, that Jose and Arturo's confessions are found voluntary, we affirm the convictions and sentences of all four appellants for the following reasons.

## SEVERANCE

The appellants contend that the court erred by denying their motions to sever their trials. They argue that the admission of Jose's and Arturo's confessions violated their rights under the sixth amendment to confront witnesses against them and therefore their convictions should be reversed. We do not agree and find that the confessions were sufficiently reliable to justify their admission. However, if error does exist, such error is nonetheless harmless beyond a reasonable doubt.

■ In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court held that a defendant is denied his sixth amendment right of confrontation when a non-testifying co-defendant's confession is introduced at their joint trial even if the jury is instructed to consider the confession only against the co-defendant. As the Court stated in *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), such statements are presumptively unreliable and cannot be admitted unless they bear "sufficient 'indicia of reliability' to rebut the presumption...." 476 U.S. at 543, 106 S.Ct. at 2063, 90 L.Ed.2d at 527, quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). *State v. St. Pierre*, 111 Wash.2d 105, 110, 759 P.2d 383, 388 (1988). In *Cruz v. New York*, 481 U.S. 186, 193, 107 S.Ct. 1714, 1719, 95 L.Ed.2d 162, 172 (1987) the Court held:

> [W]here a nontestifying codefendant's confession incriminating the defendant is *not directly admissible* against the defendant [citation omitted] ... the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him.

(Emphasis added.) A non-testifying co-defendant's confession may be admissible directly against the defendant if it is reliable and, along with other factors, a defendant's own confession may be used to determine the reliability of the co-defendant's statements. *Cruz v. New York*, supra.

What indicia of reliability do we have here to make Jose's and Arturo's confessions directly admissible despite the lack of confrontation? We determine whether there is sufficient indicia of reliability by looking at the circumstances surrounding the statement, its maker and its contents. *State v. St. Pierre*, supra. This includes the other defendants' statements and the extent to which they "interlock" with the confessions of Jose and Arturo. See *Cruz v. New York*, supra, and *Lee v. Illinois*, supra. As the Court said in *Lee*:

> If those portions of the codefendant's purportedly "interlocking" statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment.

476 U.S. at 545, 106 S.Ct. at 2064, 90 L.Ed.2d at 529.

■ The principal basis of each appellant's severance argument is his statement that the fatal blow was not delivered by him, but by the others. Each appellant, except for Arturo, maintains his innocence on the basis that he did not "kick the victim" and thus cause his death. They admit to beating or punching the victim with their fists "to teach him a lesson." However, statements by the appellants and other witnesses indicated that the victim had in fact been kicked during the beating. Arturo, on the other hand, indicated that all appellants kicked and punched the victim.

The separate statements from each appellant overlap as to the events leading up to the beating, the time of the incident, the location of all events and the motivation behind the crime. Corroborating evidence

by other witnesses was presented. Moreover, the forensic evidence was consistent with each of the appellants' statements. The only divergence in the appellants' statements centers around the issue of culpability for kicking the victim.

■ The expert testimony of the pathologist indicated that the victim's death was caused by "blunt force trauma." He testified that death resulted from repeated blows to the victim's head by either fists, kicking or a combination of both. Testimony also established that rocks and bats may have been used to injure the victim; however, the pathologist established that these instruments were not the cause of death. A violation of the *Bruton* rule does not require automatic reversal, if such error harmlessly impacts upon the co-defendants' statements. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Assuming, arguendo, that the trial court erred in admitting Jose's and Arturo's confessions because they accuse the other defendants of kicking the victim, the error was harmless beyond a reasonable doubt. A defendant's confession may be considered at trial in assessing whether any confrontation clause violation was harmless. *Cruz v. New York,* supra. Here, the other defendants admitted to participating in the beating. It does not matter which one struck the fatal blows, because they are all liable as accomplices for the murder. See A.R.S. §§ 13–301 and 13–303. We therefore find the admission of Jose's and Arturo's confessions did not constitute error.

## INSTRUCTIONS

### (a) *Willits* Instruction.

■ Appellants all join in the contention that the trial court committed reversible error by failing to give an instruction pursuant to *State v. Willits,* supra, that if the state destroyed evidence of which the contents and quality were in issue, the jury could infer the meaning of the evidence in

favor of appellants' case. The basis of the instruction requested was that a baseball-sized rock was found near the victim's body in a bloodied area. A *Willits* instruction is appropriate when the state destroys or loses evidence potentially helpful to the defendant. *State v. Lopez,* 163 Ariz. 108, 786 P.2d 959 (1990). We find that appellants were not entitled to a *Willits* instruction because they failed to show that the evidence could have had a tendency to exonerate them. See *State v. Smith,* 158 Ariz. 222, 762 P.2d 509 (1988). Police testified that the rock was of no useful purpose to the investigation and, more compelling, the pathologist testified that while a rock may have been related to the cause of death, the trauma inflicted upon the victim would have had to have been caused by a rock the size of a basketball. The record clearly contradicts appellants' position that they are entitled to such an instruction and therefore we can find no error.

### (b) *Hash* Instruction

Deric and Alex contend that a jury instruction based on *Hash v. State,* supra, that no conviction may be maintained based on "mere suspicion, probabilities or supposition," should have been given by the trial court. No objection was made by appellants' counsel and therefore this matter is deemed waived on appeal. 17 A.R.S. Rules of Crim.Proc., Rule 21.3(c); *State v. Barnett,* 142 Ariz. 592, 691 P.2d 683 (1984). However, we note that an instruction similar in content was given by the trial court.[1] See *State v. Cookus,* 115 Ariz. 99, 563 P.2d 898 (1977).

### (c) Aggravated Assault Instruction

Appellants contend the trial court erred in refusing to instruct on aggravated assault pursuant to A.R.S. § 13–1204(A)(1). We do not agree.

■ An instruction based on aggravated assault is proper where there is reasonable 'support in the record that the defendants'

---

**1.** The trial court instructed the jury, inter alia, that "[e]vidence which establishes a suspicion or the mere probability of guilt is not enough evidence to prove a person guilty beyond a reasonable doubt."

conduct was not the proximate cause of the victim's death. *State v. Melendez,* 121 Ariz. 1, 588 P.2d 294 (1978). When the victim dies as a result of an assault, the trial court is not required to instruct on the lesser-included offense of aggravated assault. *Id.*

■ Direct testimony of the medical examiner was that death resulted from blunt force trauma caused by kicking and punching. At trial, appellants advanced the theory that Michael Waters or J.D. King, a former suspect in the crime, could have come along after the beating and caused the actual fatal injuries. We find no support in the record for this argument.

Although Michael Waters returned with appellants to see the body of the victim, he testified that he committed no further physical injuries to the victim, whose body lay in the dirt. J.D. King's testimony indicated that he was not aware that the victim's body was present on the property when he entered to steal some tires. More importantly, the appellants did not present any evidence indicating that a later assault caused the death of the victim.

The evidence clearly does not support the theory that either of these two witnesses was the supervening cause of the victim's death. To assume otherwise is mere speculation. *State v. Contreras,* 107 Ariz. 68, 481 P.2d 861 (1971). Appellants were therefore not entitled to an aggravated assault instruction.

(d) Manslaughter Instruction

■ Arturo alone contends that the trial court committed reversible error in refusing to give his requested "heat of passion" manslaughter instruction. He claims that the evidence showing that the victim cut his finger with a razor preceding the fight supports his argument. Because this issue was not properly preserved during the trial, we find Arturo waives this argument on appeal.

Before the recess preceding the instruction conference, the trial judge indicated that he would give a manslaughter instruction. During the instruction conference, the trial judge distributed proposed instruc-

tions which included an instruction on reckless manslaughter. No objection was lodged by any of the appellants' counsel until after the jury had been read instructions and had retired. Thereupon, Arturo's attorney stated:

On behalf of the defendant Arthur Portillo, I spoke with the Judge prior to our closing argument and requested a manslaughter instruction which reads a person commits manslaughter by intentionally causing the death of another person upon sudden quarrel or heat of passion resulting from adequate provocation by the victim. This requested instruction was denied by the Judge, and I think it should have been given for obvious reasons pertaining to Mr. Portillo and the fight in the back of the car. That's all.

The court made no statement in response before adjourning.

We find counsel's efforts were untimely within the meaning of 17 A.R.S. Rules of Crim.Proc., Rule 21.3. We are unaware of any discussion between the trial judge and counsel where a "heat of passion" instruction was requested. Absent fundamental error, a defendant waives any error on appeal in regard to jury instructions unless he preserves the matter for review. *State v. Barnett,* supra. In cases where capital punishment is among the possibilities of verdict, the trial court commits fundamental error if it refuses to instruct the jury on all lesser-included offenses of the capital offense. Because the state did not seek the death penalty in this matter, the failure to instruct on "heat of passion" manslaughter did not constitute fundamental error.

## FAILURE TO DISMISS

All appellants except Arturo contend that the state lacked probable cause to prosecute any charges against them other than felony murder based on kidnapping. A.R.S. §§ 13–1105 and 13–1304. Their argument rests on an exchange between a member of the grand jury and the prosecutor concerning the nature of the first-degree murder allegation. The prosecutor

stated that felony murder was a theory upon which the state could secure convictions of appellants. Appellants assert that the prosecutor's response constituted an absolute election of theories of prosecution, thereby precluding the state from pursuing a strategy of premeditation. In the alternative, appellants argue that but for the prosecutor's response, the grand jury would not have issued an indictment based upon premeditation.

At the conclusion of the state's case, all appellants joined in presenting a Rule 20 motion for judgment of acquittal. 17 A.R.S. Rules of Crim.Proc. The trial court granted the motion as to the kidnapping charge but denied it as to the charge of first-degree murder because sufficient evidence of premeditation had been presented to constitute a jury question. Appellants claim error as to the latter ruling.

■ The role of the grand jury is to determine whether probable cause exists to connect the accused with the commission of a crime. *State v. Baumann,* 125 Ariz. 404, 610 P.2d 38 (1980). The record shows that the prosecutor informed the grand jury of the charges against appellants and accurately presented the law and evidence to it. *State v. Jessen,* 130 Ariz. 1, 633 P.2d 410 (1981). Further, the indictment shows that appellants received adequate notice of the charges against them.

■ Appellants maintain that the grand jury indicted them solely for felony murder; however, nothing in the record supports this assertion except for the prosecutor's statement to the grand jury. Appellants were indicted for first-degree murder. First-degree murder is one crime, although under A.R.S. § 13–1105, it may be committed two ways. *State v. Axley,* 132 Ariz. 383, 646 P.2d 268 (1982). The state is not required to elect between theories of murder when evidence exists to support both. *State v. Walton,* 159 Ariz. 571, 769 P.2d 1017 (1989); *State v. Arnett,* 158 Ariz. 15, 760 P.2d 1064 (1988); *State v. Axley,* supra. We do not find that the statement made to the grand jury limited the state from pursuing a theory of premeditation at trial and therefore find no error with the court's order.

## MISCONDUCT BY THE PROSECUTOR

■ Appellants' final contention is that the prosecutors made two comments during closing arguments which amount to misconduct and require new trials. We disagree.

The first comment concerned the dying victim's breathing sounds, which appellants described as snoring. The prosecutor labelled this a "death rattle." Defense counsel objected, the trial court admonished the prosecutor for her statement, and no reference to a "death rattle" was made again. The second statement concerned the description of the victim's fatal injuries. The prosecutor in effect stated that the snoring sounds made by the dying victim were the result of fluids building up in his lungs. No objection was made in response by the defendants and therefore the matter is waived as to this statement. Nonetheless, we find no misconduct was committed by the prosecutor with respect to either the first or second statement. We note that the use of the term "death rattle" was accurate in describing both symptoms from which the victim was suffering and the snoring effect emitted by him. See The American Heritage Dictionary, (2d College Ed.1982). We find no error because the evidence supported the comment.

We have searched the record for fundamental error and have found none.

Appellants Jose Sanchez and Arturo Portillo's cases are remanded to the trial court for a determination on voluntariness as discussed above. If the confessions are found voluntary, then the convictions and sentences of Jose Sanchez and Arturo Portillo are affirmed. If the confessions are deemed involuntary, their convictions and sentences are reversed and remanded for new trial.[2]

2. We leave it for the trial court to decide wheth-er further evidence need be taken on this issue.

The convictions and sentences of Alexander Sanchez and Deric Stuck are affirmed.

ROLL, P.J., and HATHAWAY, J., concur.