STARING, Presiding Judge:
*35 ¶1 In this appeal from Pablo Isaac Hernandez's conviction for unlawful flight from a law enforcement vehicle, we conclude the trial court erred by not giving an adverse-inference jury instruction based on State v. Willits , 96 Ariz. 184, 191, 393 P.2d 274 (1964).[1] We thus reverse Hernandez's conviction and remand for a new trial.
Factual and Procedural History
¶2 We view the facts in the light most favorable to sustaining the trial court's rulings and affirming Hernandez's conviction. See State v. Gay , 214 Ariz. 214, ¶¶ 2, 4, 150 P.3d 787 (App. 2007). On March 31, 2016, Pima County Sheriff's Deputy Michael Turner was driving a marked unit when a car ran a stop sign, entered his lane, and caused him to swerve to avoid a collision. While trying to avoid a collision, Turner "locked eyes" with the driver of the car for "a second to two seconds." He later testified the driver's face was "a face that [he] would never forget."
¶3 Turner attempted a traffic stop. The car did not stop, however, resulting in a pursuit that eventually ended in a parking lot, where the driver and two other occupants of the car fled on foot. Turner saw the driver's profile as he fled.
¶4 Within three minutes, federal marshals investigating another matter arrived at the parking lot and showed Turner a photograph bearing Hernandez's name. Turner identified him as the driver. Using the computer in his patrol unit, Turner then pulled up another photograph of Hernandez, and again identified him as the driver.
¶5 Before trial, Hernandez filed a motion to suppress evidence of Turner's pretrial identification, arguing the identification procedure was unduly suggestive under State v. Dessureault , 104 Ariz. 380, 453 P.2d 951 (1969), and the identification, if admitted, would be more prejudicial than probative under Rule 403, Ariz. R. Evid. He also moved to preclude Turner from making an identification during trial. The trial court denied the motions, finding the pretrial identification reliable. At trial, Turner again identified Hernandez as the driver.
¶6 Also before trial, Hernandez requested a Willits instruction based on the state's failure to collect DNA and fingerprint evidence from the car before releasing it to the registered owner. The trial court denied the motion, finding no loss or destruction of evidence, and also finding that, even had such evidence been discovered and preserved, it would have been "neutral" in terms of its capacity to exculpate or inculpate Hernandez.
¶7 Hernandez was convicted and sentenced to three years' imprisonment and this appeal followed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).
Discussion
Pretrial Identification
¶8 Hernandez argues the trial court erred when it failed to preclude Turner's pretrial and in-court identifications. We review the court's "rulings on pretrial identifications for abuse of discretion." State v. Moore , 222 Ariz. 1, ¶ 17, 213 P.3d 150 (2009) ; see also State v. Leyvas , 221 Ariz. 181, ¶ 9, 211 P.3d 1165 (App. 2009) (fairness and reliability of challenged identification reviewed for clear abuse of discretion). "We defer to a ... court's factual findings that are supported by the record and are not clearly erroneous." Moore , 222 Ariz. 1, ¶ 17, 213 P.3d 150. "The ultimate question of the constitutionality of a pretrial identification is, however, a mixed question of law and fact" we review de novo. Id . And, "[a] trial court ruling on a motion to suppress is reviewed *36 based solely on the evidence presented at the suppression hearing." Id.
¶9 At the suppression hearing, Turner testified he was "[v]ery certain" of his identification of Hernandez as the driver when the marshals showed him the photograph moments after the pursuit ended. In challenging the reliability of Turner's identification and asserting the pretrial identification procedure was unduly suggestive, Hernandez points to Turner's other statement that, without that photograph, he "probably would not have been able to identify him later on down that road." The trial court, however, questioned Turner about that admission:
The Court: And you mentioned if you hadn't had those pictures sitting here today, if it's the first time you saw him again, you don't know if you would be able to recognize him from the small view that you had when he went by you?
[Turner]: From the incident, yeah, I could recognize him today, but from the point when-before I made contact with [Hernandez] that afternoon I would not have been able to identify [him] as Pablo Hernandez, but the face of the driver I would be able to identify .
(Emphasis added.)
¶10 The Due Process Clause of the Fourteenth Amendment "has been interpreted to require 'that any pretrial identification procedures [be] conducted in a manner that is fundamentally fair and secures the suspect's right to a fair trial.' " State v. Rojo-Valenzuela , 237 Ariz. 448, ¶ 6, 352 P.3d 917 (2015) (alteration in Rojo-Valenzuela ) (quoting State v. Lehr , 201 Ariz. 509, ¶ 46, 38 P.3d 1172 (2002) ). "Whether an identification procedure is so suggestive that it violates a defendant's due process rights depends on the totality of the circumstances." Id. A two-part test exists "for determining the admissibility of identification testimony," examining first "whether the method or procedure used was unduly suggestive," and then, "if unduly suggestive, whether it led to a substantial likelihood of misidentification, i.e., whether it was reliable." State v. Goudeau , 239 Ariz. 421, ¶ 132, 372 P.3d 945 (2016) (quoting Lehr , 201 Ariz. 509, ¶ 46, 38 P.3d 1172 ).
¶11 In Rojo-Valenzuela , our supreme court held "[a]n inherently suggestive one-person show-up identification procedure implicates due process, but such an identification is nevertheless admissible at trial if it is sufficiently reliable." 237 Ariz. 448, ¶ 1, 352 P.3d 917. Here, assuming without deciding that federal marshals showing Turner a single photograph was equivalent to a one-person show-up procedure and thus inherently suggestive,[2] we must determine whether the resulting identification was nonetheless reliable. Id. In doing so, we consider the totality of circumstances including the following factors: "(1) the witness's opportunity to view or hear the perpetrator at the time of the offense; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty; and (5) the length of time between the crime and the confrontation." Goudeau , 239 Ariz. 421, ¶ 132, 372 P.3d 945. This list of factors is not exclusive and "a court may rely on other indicia of reliability as well." Rojo-Valenzuela , 237 Ariz. 448, ¶ 8, 352 P.3d 917.
¶12 Turner had the opportunity to view Hernandez's face, "lock[ing] eyes" with him, as he swerved to avoid a collision. Although he viewed Hernandez briefly, Turner's full attention was on Hernandez's face during the near collision. He also saw Hernandez's profile as he fled on foot from the car. Within three minutes of Hernandez fleeing, Turner saw the marshals' photograph and recognized him. Further, Turner testified he was "[v]ery certain" in his identification of Hernandez and that he would have been able to identify him in court without having first viewed the photograph. Applying the Goudeau factors, this record adequately supports the trial court's finding that Turner's identification was sufficiently reliable to be presented to the jury. See, e.g. , State v. Rojo-Valenzuela , 235 Ariz. 617, ¶ 15, 334 P.3d 1276 (App. 2014), aff'd , 237 Ariz. 448, 352 P.3d 917 (2015) (witness's identification *37 reliable when "short duration of [witness's] observation was more than offset by his degree of attention"). Thus, the court did not abuse its discretion in admitting the identification.[3]
Willits Instruction
¶13 Hernandez argues the trial court erred when it denied his request for a Willits instruction based on the state's failure to collect fingerprint and DNA evidence from the car before releasing it. "We review rulings regarding a Willits instruction for abuse of discretion." State v. Glissendorf (Glissendorf II) , 235 Ariz. 147, ¶ 7, 329 P.3d 1049 (2014). "An error of law constitutes an abuse of discretion." State v. Cheatham , 240 Ariz. 1, ¶ 6, 375 P.3d 66 (2016).
¶14 In a Willits instruction, the jury is told that if it finds "that the state ... allowed material evidence to be destroyed," or, in some circumstances failed to preserve evidence, it may "infer that the evidence would be against the interests of the state." State v. Hunter , 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983) (instruction required after destruction of evidence) (citing Willits ); see also State v. Perez , 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984) (instruction required where state fails to preserve "obviously material, and reasonably accessible" evidence and prejudice shown). In Willits , the state charged the defendant with attempting to ignite an explosion, and his defense was that the explosion was an accident. 96 Ariz. at 186-87, 393 P.2d 274. The state destroyed the package of explosives that was recovered at the scene, and Willits argued it might have aided him in showing the explosion was accidental. Id. at 187-88, 393 P.2d 274. The trial court denied his request for a jury instruction that read: "If you find that the plaintiff, the State of Arizona, has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against their interest." Id. at 187, 393 P.2d 274. Our supreme court, however, concluded the requested instruction should have been given because "an inference unfavorable to the prosecution could have been drawn" and "[t]his in itself could create a reasonable doubt as to the defendant's guilt." Id. at 191, 393 P.2d 274 (emphasis omitted).
¶15 Here, Hernandez's defense at trial was that he was not the driver of the car, and the state's evidence consisted solely of Turner identifying Hernandez as the driver. Before trial, Hernandez requested a Willits instruction "based upon the State's failure to preserve material evidence" because "[i]dentification is a major issue in this case and forensic evidence from inside the [car], including fingerprint and DNA evidence from the steering wheel could have shown that [Hernandez] was not driving the car." The state opposed the motion, arguing "the [car] had little probative value" and that "the identity of the driver is not an issue" because Turner identified Hernandez as the driver. The trial court ruled:
[T]his is not evidence because we don't know what is there and it's not a loss of evidence and it's not a destruction of evidence. And whether you are talking about whether it's exculpatory, it just as easily could be inculpatory. It's a non-there is no indicator of which way the evidence goes.
And what I believe, it's not appropriate to present an inference to the jury that something exculpatory was there because I don't think it rises to that level. It's a nullity in my mind. It's a neutral-the evidence could be against him and could be for him. That being the case obviously, because you had the opportunity if it's going to be an identification case-because you have the opportunity to discuss regarding what they could have done to further identify him and that's already in the record, I'm going to deny the motion because I don't think a Willits instruction is necessary under those circumstances.
*38 ¶16 Concerning the standard a defendant must satisfy to obtain a Willits instruction, our supreme court recently held: "To be entitled to a Willits instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." Glissendorf II , 235 Ariz. 147, ¶ 8, 329 P.3d 1049 (quoting State v. Smith , 158 Ariz. 222, 227, 762 P.2d 509, 514 (1988) ); see also State v. Speer , 221 Ariz. 449, ¶ 40, 212 P.3d 787 (2009) ; State v. Broughton , 156 Ariz. 394, 399, 752 P.2d 483, 488 (1988). Although Glissendorf II acknowledges that a defendant "must do more than simply speculate about how the evidence might have been helpful," 235 Ariz. 147, ¶ 9, 329 P.3d 1049, the phrase "tendency to exonerate," "does not mean the evidence must have had the potential to completely absolve the defendant," id. ¶ 10. Indeed, "tendency to exonerate" has been used interchangeably with "potentially helpful." Id. ; see also State v. Murray , 184 Ariz. 9, 33, 906 P.2d 542, 566 (1995) ; State v. Davis , 205 Ariz. 174, ¶ 35, 68 P.3d 127 (App. 2002). Thus, "a defendant 'is entitled to an instruction if he can demonstrate that the lost evidence would have been material and potentially useful to a defense theory supported by the evidence.' " Glissendorf II , 235 Ariz. 147, ¶ 10, 329 P.3d 1049 (quoting State v. Glissendorf (Glissendorf I) , 233 Ariz. 222, ¶ 17, 311 P.3d 244 (App. 2013), vacated , 235 Ariz. 147, 329 P.3d 1049 ).
¶17 Hernandez maintains he was entitled to a Willits instruction because the state failed to preserve the car or collect fingerprint and DNA evidence from it, and that such evidence would have tended to exonerate him. Specifically, he argues the "absence of DNA and fingerprints could have substantiated his defense that he was not the driver." The state counters that Hernandez was not entitled to a Willits instruction because he "failed to show that fingerprinting and DNA testing of the car would have a tendency to exonerate him." The state also contends "whether the surfaces of the car would have produced fingerprint and DNA evidence is entirely speculative" and the absence of such evidence "would not support his defense theory of misidentification because people often do not leave behind fingerprints or DNA after touching an item." On the record before us, we agree with Hernandez.
¶18 First, the state failed to preserve any fingerprints and DNA that may have been present in the car before returning it to its owner. And, because the sole issue was the identification of the driver, and the validity of that identification was disputed, physical evidence from the interior of the car, particularly the driver's side, was material. This evidence was also reasonably accessible, as the car had been abandoned by the occupants and the sheriff's department had possession of it. Deputies had the opportunity to examine the car for fingerprints and DNA before releasing it.[4]
¶19 Second, fingerprint and DNA evidence collected from the car could have had the potential to exonerate Hernandez. We disagree with the state's argument that whether the surfaces of the car could have produced such evidence is "entirely speculative." At trial, Hernandez admitted a photograph showing several visible fingerprints both on the window and driver's door frame. Hernandez neither could nor needed to show more about these fingerprints (i.e., whether they were on the inside or outside of the car or whether they were forensically useable) because, due to the actions of the state, he did not at any point have access to the car. Moreover, both the state and our dissenting *39 colleague disregard the fact that, although not necessarily dispositive, the absence of Hernandez's fingerprints and DNA in the vehicle-particularly on the steering wheel, gear shift and door handle-would have been exculpatory.[5]
¶20 Mindful of the inherently uncertain tilt of evidence which has been lost or destroyed, a Willits instruction merely erects a rebuttable presumption. It does not require the jury to infer the missing evidence would have been adverse to the state; the jury is free to reject that notion. Nor does a Willits instruction preclude the state from presenting evidence about why the absence of particular evidence is neither dispositive nor even exculpatory. The instruction allows the jury to weigh all of the evidence, the absence of evidence, and any explanation the state may have for why it was destroyed or otherwise not preserved.
¶21 We conclude that Hernandez has met his burden of showing that the evidence, if preserved, would have been potentially helpful to him. He was entitled to a Willits instruction as to the state's failure to preserve any fingerprint and DNA evidence in the car. The trial court erred by denying the instruction.[6]
Disposition
¶22 For the foregoing reasons, we reverse Hernandez's conviction and remand for a new trial.[7]

Such an instruction is commonly known as a "Willits instruction."

An "unduly suggestive" identification procedure described in Dessureault , triggering "the need for a reliability analysis," is the same as an "inherently suggestive" identification procedure described in other case law. See Rojo-Valenzuela , 237 Ariz. 448, n.1, 352 P.3d 917.

In view of our resolution of this issue, we need not reach the state's argument that the identification procedure was not unduly suggestive because the identification was made as a matter of law enforcement necessity. See State v. Wood , 180 Ariz. 53, 72, 881 P.2d 1158, 1177 (1994) ("Our disposition of the other issues on appeal, however, makes it unnecessary to reach this issue.").

Ordinarily, a Willits instruction is not warranted merely because the state fails to test evidence, but rather when the state causes or allows the evidence to be unavailable to the defendant. See Broughton , 156 Ariz. at 399, 752 P.2d at 488 (instruction inappropriate where state delayed testing evidence but did not destroy or lose it); State v. Watkins , 126 Ariz. 293, 301, 614 P.2d 835, 843 (1980) (failure to identify blood type on weapon not destruction of evidence); State v. Todd , 244 Ariz. 374, ¶ 24, 418 P.3d 1147 (App. 2018) (decision not to develop DNA or fingerprint evidence from weapon not destruction or loss of evidence). Here, the deputies neither preserved the car nor examined it for fingerprints or DNA. Instead, they released it to the owner a few weeks after the incident, which was approximately three months before Hernandez's arrest. This prevented the defense from conducting any fingerprint or DNA testing of its own.

Likewise, the presence of fingerprints or DNA belonging neither to Hernandez nor anyone else with legitimate access to the car could have been exculpatory. As the trial court correctly noted, the presence of Hernandez's fingerprints or DNA in the car would have inculpated him. But, as made clear in Glissendorf II , and implicit in Willits itself, a defendant need only show that the lost evidence would have had the potential to be exculpatory: he need not show it would necessarily have been so.

The state has not argued that error in failing to give a Willits instruction would be harmless.

Hernandez argues the trial court also erred by precluding expert testimony from a Tucson Police Department detective, who would describe proper non-suggestive identification procedures. See Wood , 180 Ariz. at 72, 881 P.2d at 1177. Hernandez maintains such testimony was relevant to explain to a jury how the photo identification here, which deviated substantially from those procedures, was suggestive. Because we reverse for the reasons stated above, we do not reach this issue.