IN THE
# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee*,

*v.*

PABLO ISAAC HERNANDEZ,
*Appellant*.

No. CR-19-0193-PR
Filed October 27, 2020

Appeal from the Superior Court in Pima County
The Honorable Michael J. Butler, Judge
No. CR20161916-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
246 Ariz. 543 (App. 2019)
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, Michael T. O'Toole, Chief Counsel, Michelle L. Hogan, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for State of Arizona

Joel Feinman, Pima County Public Defender, Michael J. Miller, David J. Euchner, Deputy Public Defenders, Tucson, Attorneys for Pablo Isaac Hernandez

Nicholas C. DiPiazza, Glendale, and Lisa S. Wahlin, Phoenix, Attorneys for Amicus Curiae, The Arizona Law Enforcement Legal Advisors Association

Bill V. Amato, and Eric B. Edwards, Sedona, Attorneys for Amicus Curiae
Arizona Association of Chiefs of Police

---

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF
JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES
BOLICK, GOULD, LOPEZ, and MONTGOMERY joined.

---

JUSTICE BEENE, Opinion of the Court:

¶1 When the state fails to preserve obviously material and
reasonably accessible evidence that could have had a tendency to exonerate
the accused and prejudice results, the trial court must provide the jury a
*Willits*[1] instruction. *State v. Glissendorf*, 235 Ariz. 147, 152 ¶ 18 (2014); *State
v. Perez*, 141 Ariz. 459, 464 (1984). This instruction is powerful, informing
jurors that they may draw an inference unfavorable to the state, which in
itself may create a reasonable doubt as to the defendant's guilt. *See Willits*,
96 Ariz. at 191; *see also* Rev. Ariz. Jury Inst. (Crim.) Standard 42, at 33–34
(4th ed. 2016). Here, we address whether law enforcement's failure to
collect putative fingerprint and DNA evidence warranted a *Willits*
instruction. We hold it did not. We vacate the court of appeals' opinion
holding otherwise and affirm the defendant's conviction and sentence. *See
State v. Hernandez*, 246 Ariz. 543, 549 ¶¶ 21–22 (App. 2019).

## BACKGROUND

¶2 In March 2016, Pima County Sheriff's Deputy Michael Turner
was driving on patrol when a car ran a stop sign and entered his lane,
causing him to swerve to avoid a collision. As the car passed his vehicle,
Turner made eye contact with the driver through the latter's partially open
driver's-side window for one to two seconds. Turner later testified the
driver's face was "a face that [he] would never forget."

¶3 Turner attempted to conduct a traffic stop, but the car sped
away. After a short pursuit, the car stopped at an apartment complex and

---

[1] *State v. Willits*, 96 Ariz. 184 (1964).

three men got out and fled. As the men ran off, Turner saw the driver's profile from approximately ten feet away. Turner searched the apartment complex but was unable to find the men.

¶4        Shortly after arriving at the apartment complex, Turner was contacted by federal marshals. The marshals explained they had been pursuing a car in connection with another offense and showed Turner a photograph bearing Pablo Hernandez's name. Turner agreed the person in the photograph was the driver of the car he had been following. Using the computer in his patrol car, Turner pulled up another photograph of Hernandez and again identified him as the driver.[2]

¶5        Police impounded the car without collecting any evidence from its interior. About a week after the incident, the car was returned to its owner, who had reported it stolen. Approximately three months after the incident, Hernandez was arrested.

¶6        The State indicted Hernandez with one count of fleeing from a law enforcement vehicle. *See* A.R.S. § 28-622.01 (2016).[3] Before trial, Hernandez requested a *Willits* instruction, arguing the State's failure to collect fingerprint and DNA evidence from the car deprived him of a fair trial. The trial court denied Hernandez's request after a hearing, concluding: (1) the State did not destroy, lose, or fail to collect evidence because it was unclear whether the evidence in question existed; and (2) the evidence was just as likely to be inculpatory as exculpatory. The jury found Hernandez guilty, and the court sentenced him to three years in prison. A.R.S. § 13-703(J).

---

[2]        Hernandez moved to suppress Turner's identification as unduly suggestive, but the trial court denied Hernandez's motion. The court of appeals affirmed that ruling, and Hernandez does not challenge it in this Court. *Hernandez*, 246 Ariz. at 546–47 ¶ 12.

[3]        The legislature extensively revised § 28-622.01 in 2018. Because these changes were substantive, we cite the 2016 version that was in effect at the time of the events here.

¶7　　　　The court of appeals reversed Hernandez's conviction and remanded for a new trial, concluding the trial court abused its discretion by refusing to give a *Willits* instruction. *Hernandez*, 246 Ariz. at 545 ¶ 1. It reasoned that Hernandez "met his burden of showing that the [fingerprint and DNA] evidence, if preserved, would have been potentially helpful to him." *Id.* at 549 ¶ 21.

¶8　　　　We granted review to determine whether Hernandez, under these circumstances, was entitled to a *Willits* instruction, a matter of statewide interest. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶9　　　　"We review rulings regarding a *Willits* instruction for abuse of discretion." *Glissendorf*, 235 Ariz. at 150 ¶ 7. We "will not reverse [the decision to refuse a jury instruction] absent a clear abuse of that discretion." *State v. Bolton*, 182 Ariz. 290, 309 (1995).

¶10　　　Generally, a defendant is entitled to a *Willits* instruction if: (1) the state failed to preserve obviously material and reasonably accessible evidence that could have had a tendency to exonerate the accused; and (2) there was resulting prejudice. *Glissendorf*, 235 Ariz. at 152 ¶ 18; *Perez*, 141 Ariz. at 464. To prove the first prong, the defendant "must do more than simply speculate about how the evidence might have been helpful"; there must be "a real likelihood that the evidence would have had evidentiary value." *Glissendorf*, 235 Ariz. at 150 ¶ 9. The defendant need not show the state destroyed the evidence in bad faith; rather, *Willits* imposes a "consequence for even innocent loss or destruction . . . both to deter such action and to ensure that defendants do not bear the burden of the state's actions." *Id.* at 151 ¶ 13.

### I.

¶11　　　Here, Hernandez did not assert that the State destroyed or lost evidence, only that it failed to collect fingerprint and DNA evidence from the car before returning it to the owner. However, it is well-settled that "the [s]tate does not have an affirmative duty to seek out and gain possession of potentially exculpatory evidence," nor does it have a duty to gather evidence for a defendant to use in establishing a defense. *State v.*

*Rivera*, 152 Ariz. 507, 511–12 (1987); *see also State v. Murray*, 184 Ariz. 9, 33 (1995) ("A *Willit*s instruction is not given merely because a more exhaustive investigation could have been made."). The state must only "act in a timely manner to ensure the preservation of evidence it is aware of where that evidence is obviously material and reasonably within its grasp." *Perez*, 141 Ariz. at 463. Here, we decide whether law enforcement's failure to collect physical evidence from inside the car violated its duty to preserve "obviously material" evidence.

¶12 Until now, we have not defined what constitutes "obviously material" evidence in a *Willits* context. Generally, evidence is "material" if it has "some logical connection with the facts of the case or the legal issues presented." *Material Evidence*, Black's Law Dictionary (11th ed. 2019). The dictionary definition finds support in Arizona law, where courts have determined evidence to be "obviously material" when, at the time of the state's investigation, the state relied on the evidence as part of its investigation or knew that the defendant would use the evidence for his or her defense. *See Willits*, 96 Ariz. at 191; *Perez*, 141 Ariz. at 463–64; *State v. Fuentes*, 247 Ariz. 516, 525 ¶ 32 (App. 2019).

¶13 For example, in *Perez*, the defendant was charged with armed robbery of a convenience store. 141 Ariz. at 461. The store's surveillance camera recorded the crime, and the victim viewed the videotaped footage of the robbery multiple times. *Id.* at 463. During the investigation, several police officers also viewed the videotape on multiple occasions before it was destroyed. *Id.* We rejected the State's argument that *Willits* does not apply when the police "never had possession of the destroyed evidence," and determined that "[t]he [S]tate could have, and indeed should have, secured possession of the tape . . . . The [videotape] was obviously material and the police were aware of its existence." *Id.* The Court did not focus on whether the State had possession of the evidence but on the fact that the tape was "obviously material" to the State's investigation. *See id.*; *cf. State v. Sanchez*, 165 Ariz. 164, 169 (App. 1990) (rejecting need for a *Willits* instruction where "[p]olice testified that the [evidence] was of no useful purpose to the investigation").

¶14 As *Perez* indicates, the analysis focuses on the time of the state's investigation. The court of appeals' opinion in *Fuentes* is particularly instructive on this point. 247 Ariz. at 525–26 ¶¶ 30–35. In that case, the

defendant was charged with first degree murder and aggravated assault. *Id.* at 519 ¶ 1. The defendant shot and killed victim D.P. during a confrontation between the two men. *Id.* at 520 ¶¶ 4–6. At trial, the defendant claimed he shot D.P. in self-defense after D.P. attempted to run him over with a truck and rammed the truck into a fence. *Id.* at 524 ¶ 25. The defendant "sought to establish that D.P. left a shoeprint on the other side of the downed fence, indicating, because of its placement, that he was shot after the fence was struck." *Id.* Although a crime scene technician had noticed a shoeprint at the crime scene, the State had not photographed the print. *Id.* at 525 ¶ 30.

¶15 The court of appeals rejected the defendant's argument that he was entitled to a *Willits* instruction based on the State's failure to photograph the shoeprint. *Id.* at 525–526 ¶¶ 30–35. It determined the shoeprint evidence was not "obviously material" because, at the time of their investigation, "police correctly understood that D.P. had been present on [the] property sometime before the shooting, such that any shoeprints he may have left would not necessarily be tied to the incident"; no witnesses at the scene indicated the defendant acted in self-defense; and the defendant had not made a claim of self-defense. *Id.* ¶ 32. The court of appeals concluded that "[g]iven the facts known to law enforcement officers at the time of their investigation of the crime scene," the court did not err by "implicit[ly] finding that it was reasonable for the police to decide not to photograph the shoeprint." *Id.* at ¶ 33; *see also State v. Tyler*, 149 Ariz. 312, 317 (App. 1986) (rejecting need for a *Willits* instruction where "[a]t the time the weapon was seized, the officer had no reason to know what the defendant's defense would be concerning [the fingerprints defendant claimed were on the weapon]").

¶16 Considering these cases, we conclude that evidence is "obviously material" when, at the time the state encounters the evidence during its investigation, the state relies on the evidence or knows the defendant will use the evidence for his or her defense. Analyzing the materiality of the evidence at the time of the state's investigation balances the realities of law enforcement's goal of conducting a timely investigation while also ensuring that law enforcement is "neither intentionally selective or elusive, nor careless, negligent, or lazy, in seizing and assuring the preservation of material evidence." *Perez*, 141 Ariz. at 464.

## II.

¶17         Turning to the facts of this case, in denying Hernandez's request for a *Willits* instruction, the trial court concluded that the State did not have a duty to preserve fingerprint and DNA evidence from the car when, at the conclusion of its investigation, Hernandez had not been apprehended and the State had developed sufficient evidence establishing the identity of the driver.  The court of appeals disagreed with the trial court's reasoning, stating that the instruction was necessary because the "physical evidence from the interior of the car, particularly the driver's side, was material" given that the "sole issue" at trial was the identification of the driver.  *Hernandez*, 246 Ariz. at 548 ¶ 18.

¶18         The practical effect of the court of appeals' decision would require the state to gather evidence based upon any number of possible defenses an accused might later proffer at trial.  This determination is inconsistent with the state's duty to preserve "evidence it is aware of" and when "that evidence is obviously material and reasonably within its grasp." *Perez*, 141 Ariz. at 463.  It also would not further the purpose of *Willits*, which is to impose a necessary "consequence for even innocent loss or destruction . . . both to deter such action and to ensure that defendants do not bear the burden of the state's actions." *Glissendorf*, 235 Ariz. at 151 ¶ 13.

¶19         At the outset of the State's investigation, Turner had already identified Hernandez, so the officers had no need to collect fingerprint or DNA evidence to identify the suspect.  Additionally, at that time, law enforcement had no knowledge that Hernandez would later assert the existence of an alternate driver that would make DNA or fingerprint evidence material.  Hernandez has failed to demonstrate why police would have had reason to collect this evidence.  Given the facts known to the State at the time of the investigation, Hernandez has failed to show that any DNA or fingerprint evidence was "obviously material."  The trial court did not abuse its discretion in concluding it was reasonable for the State to not collect fingerprint and DNA evidence from the interior of the car.

¶20         Additionally, we agree with the trial court that Hernandez failed to show that the uncollected evidence tended to exonerate him.  To meet this burden, Hernandez was required to "do more than simply speculate about how the evidence might have been helpful"; rather, "there

must be a real likelihood that the evidence would have had evidentiary value." *Glissendorf*, 235 Ariz. at 150 ¶¶ 9–10.

**¶21** In this case, there was no "real likelihood" the evidence would have had evidentiary value because any fingerprint or DNA evidence would only either: (1) match Hernandez, definitively confirming he was the driver; or (2) not match Hernandez, which would not conclusively exculpate him because he may not have left identifiable DNA or fingerprints, even if he were the driver. *Cf. State v. Tucker*, 157 Ariz. 433, 441–42 (1988) (recounting expert testimony "that a person may or may not leave a fingerprint after touching an object" and "it would be easy, either intentionally or unintentionally, to wipe off fingerprints . . . with a cloth").

**¶22** Hernandez failed to prove either of the two parts of the first prong of the *Willits* test—namely, that the evidence was "obviously material" and "had a tendency to exonerate him." *See Glissendorf*, 235 Ariz. at 152 ¶ 18. Because Hernandez failed to establish the first prong of the *Willits* test, we need not consider whether the absence of fingerprint and DNA evidence or the instruction were prejudicial to him. Nevertheless, we note that in support of his argument that the State failed to meet its burden of proof, Hernandez cross-examined the State's witness about the failure to collect evidence from the car and argued the essence of the *Willits* instruction to the jury during closing argument. *Cf. Perez*, 141 Ariz. at 464 n.6 ("[T]he trial court's decision to forego a *Willits* instruction did not preclude defense counsel from arguing the substance of that instruction to the jury."). The State's failure to look for DNA and fingerprint evidence may have put Hernandez in a better position to impeach Turner's eyewitness identification, thereby raising the specter of reasonable doubt.

**¶23** In sum, a defendant is entitled to a *Willits* instruction when the state fails to preserve evidence that is "obviously material and reasonably accessible" that "could have had a tendency to exonerate the accused" and the defendant is prejudiced thereby. *Perez*, 141 Ariz. at 464; *Glissendorf*, 235 Ariz. at 152 ¶ 18. The obvious materiality of the evidence must be apparent at the time the state encounters the evidence during its investigation. The state's failure to gather every conceivable piece of physical evidence does not require a *Willits* instruction.

¶24 However, if the state fails to collect "evidence that, though not obviously material, turns out to be material, it is up to the trial judge to determine if the state's failure to recognize its materiality was reasonable or not and to give a *Willits* instruction only where it finds the failure to have been unreasonable." *Perez*, 141 Ariz. at 464 n.5. This allows a defendant the opportunity to challenge the reasonableness of the state's failure to preserve evidence during its investigation. If the trial court determines that the state's failure to collect evidence during its investigation was unreasonable, a *Willits* instruction is appropriate.

## CONCLUSION

¶25 Because the trial court did not abuse its discretion in denying Hernandez's request for a *Willits* instruction, we vacate the court of appeals' opinion, and affirm Hernandez's conviction and sentence.