NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DONALD ROBERT HOPKINS, *Appellant*.

No. 1 CA-CR 18-0776
FILED 1-16-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201400225
The Honorable Billy K. Sipe Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

**C A M P B E L L**, Judge:

**¶1**        Donald Hopkins appeals his convictions and sentences for failure to remain at the scene of an accident, endangerment, criminal damage, and aggravated assault. For the following reasons, we affirm.

### BACKGROUND[1]

**¶2**        While traveling on an interstate highway after dusk, P.M. spotted an oncoming vehicle in his lane and immediately "pulled hard to the right" to avoid a collision. Despite this evasive maneuver, the oncoming pickup truck struck and flipped P.M.'s Honda Accord. Once the Honda came to a stop on the side of the highway, P.M. crawled out, having sustained injuries to his face, arm, and back.

**¶3**        Meanwhile, the truck continued on toward oncoming traffic and R.W., the driver of a BMW that had been trailing P.M.'s Honda, successfully veered to the right to avoid a head-on collision. Without stopping, the driver of the pickup truck continued down the highway for a brief period, but then drove off the road, crossed a fence barrier, circled back, and stopped on the right side of the highway.

**¶4**        After pulling over, R.W. ran to the pickup truck while some of his passengers ran toward the overturned Honda. Concerned that the truck driver may attempt to "flee the scene," R.W. approached him, determined he was the sole occupant of the vehicle, and pulled him out of the truck through the passenger-side door. After removing him from the truck, R.W. asked the driver whether he was injured and told him that the police had been notified. In response, the truck driver asked whether he had "kill[ed] anybody" and R.W. told him that everyone was "all right." R.W. then sat with the truck driver for "a short period of time" before

---

[1] We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

returning to his vehicle. Looking back a few moments later, R.W. saw the truck driver "walking off into the desert."

¶5          By the time a police officer responded to the scene, the driver of the truck was gone. After R.W. provided a description of the truck driver, the officer searched the truck, found a cell phone, and showed R.W. a picture from the phone. R.W. confirmed that the pictured individual was the truck driver.

¶6          While searching the area around the pickup truck, the officer discovered "boot prints" in the desert sand, but the prints ended at a rocky wash bottom. The next day, the officer received a report of an individual matching the truck driver's description spotted in a town approximately five miles from the site of the accident.

¶7          Acting on that information, the officer drove into town and approached the reported individual, Hopkins, in a restaurant. The officer immediately recognized Hopkins as the person from the cell phone photograph. After a brief exchange, the officer advised Hopkins of his *Miranda* rights and took him into custody.[2] When asked, Hopkins admitted that the last thing he remembered was getting "really drunk" and then waking, injured, at the side of a highway. Although Hopkins was not the registered owner of the pickup truck, he acknowledged that the vehicle and its keys had been left at his home but consistently denied driving the pickup truck at the time of the accident.

¶8          After questioning Hopkins, the officer drove him to the accident scene, removed Hopkins' boots, and photographed the boots next to the boot prints left in the sand. Upon comparison, the officer determined that Hopkins' boots matched the boot prints "perfectly."

¶9          The State charged Hopkins with one count of failure to remain at the scene of an accident involving injury (Count 1); five counts of endangerment (Counts 2-6); one count of criminal damage (Count 7); one count of aggravated assault (Count 8); and one count of aggravated driving while under the influence (Count 9). The State also alleged that Hopkins had multiple prior felony convictions.

¶10          After a three-day trial, a jury found Hopkins guilty of all charges except the aggravated driving under the influence count. Nearly three years later, Hopkins was arrested pursuant to a bench warrant and

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

sentenced to an aggregate term of ten years' imprisonment. Hopkins timely appealed.

## DISCUSSION

**¶11**        As his sole issue on appeal, Hopkins argues the superior court improperly denied his request for a *Willits* instruction.[3] First, he contends the court applied an incorrect legal standard in evaluating and ultimately denying his request. Second, he asserts he was entitled to the instruction because the State failed to preserve the pickup truck, and therefore any potential exculpatory value it may have had was lost. Specifically, Hopkins argues that had the truck been preserved, fingerprint and DNA evidence may have shown that he was not the driver.

**¶12**        "We review rulings regarding a *Willits* instruction for [an] abuse of discretion." *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 7 (2014). We will affirm the superior court's decision "if it is correct for any reason, even if that reason was not considered" by the court. *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

**¶13**        At trial, Hopkins' defense was three-fold: (1) he was not the driver of the pickup truck; (2) if he was the driver, his erratic and dangerous driving may have been caused by a medical issue; or (3) if he was the driver, his erratic and dangerous driving may have been caused by a mechanical problem. During the State's case-in-chief, R.W. testified, without equivocation, that the pickup truck was occupied by only one person—the driver. After confirming that he "g[o]t a good look" at the truck driver, R.W. positively identified Hopkins, in-court, as that individual. Later, the investigating officer corroborated R.W.'s in-court identification, testifying that Hopkins acknowledged ownership of a brown jacket that had been found in the pickup truck the night of the accident and opining that Hopkins' boots were a "perfect" match to the boot prints tracked from the pickup truck into the desert.

**¶14**        On cross-examination, the officer acknowledged, however, that the State did not preserve the pickup truck as evidence, explaining the police impound lot was "completely full" and retention of the vehicle did not appear necessary. Building on that admission, defense counsel elicited testimony from a defense investigator that the pickup truck could not be located for inspection.

---

[3] *State v. Willits*, 96 Ariz. 184 (1964).

¶15 During the settling of final jury instructions, defense counsel requested a *Willits* instruction based on the State's failure to preserve the pickup truck for defense inspection. The superior court denied the request, finding: (1) Hopkins substantially delayed his attempt to locate the pickup truck, waiting until eight months after the accident; (2) no evidence suggested bad intent by the State in failing to preserve the pickup truck; and (3) no evidence suggested the pickup truck could provide "potentially helpful evidence." When defense counsel urged the court to reconsider its ruling, the court cited *State v. Tinajero*, 188 Ariz. 350 (App. 1997), and stated there was no basis to find that the pickup truck may have contained exculpatory evidence.

¶16 A *Willits* instruction permits a jury to infer from the State's failure to preserve evidence that such evidence "would have been exculpatory." *State v. Fulminante*, 193 Ariz. 485, 503, ¶ 62 (1999). "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *Glissendorf*, 235 Ariz. at 150, ¶ 8 (internal quotation omitted). Speculation that "evidence might have been helpful" does not establish prejudice. *Id.* at ¶ 9. Instead, the defendant must show "a real likelihood that the evidence would have had evidentiary value." *Id.*

¶17 As noted by Hopkins, the superior court relied on *Tinajero* for the proposition that a *Willits* instruction is not warranted unless an unpreserved object's exculpatory value was apparent before it was lost or destroyed. 188 Ariz. at 355. But, in *Glissendorf*, our supreme court clarified that the "apparent exculpatory value requirement" implied by some cases, including *Tinajero*, "incorrectly conflated the due process analysis with that for *Willits* instructions." 235 Ariz. at 152, ¶ 18. Therefore, the superior court applied an erroneous legal standard in denying Hopkins' requested instruction.

¶18 Citing *State v. Hernandez*, 246 Ariz. 543 (App. 2019), Hopkins contends that DNA and fingerprint evidence from the pickup truck could have exculpated him. Like this case, *Hernandez* involved an erratic driver who caused another driver to swerve to avoid a collision. 246 Ariz. at 545, ¶ 2. In *Hernandez*, the driver of the other vehicle "locked eyes" on the erratic driver for only "a second to two seconds," but positively identified Hernandez as the erratic driver, notwithstanding that in addition to Hernandez, two other occupants fled the erratically-driven vehicle on foot. *Id.* at 545, ¶¶ 2–3. In finding that the superior court erred by denying Hernandez's request for a *Willits* instruction based on the State's failure to

preserve the vehicle at issue, this court specifically noted that a photograph admitted at trial clearly showed "several visible fingerprints both on the window and the driver's door frame." Because the validity of the driver identification was disputed, Hernandez had met his burden of demonstrating that the evidence, if preserved, would have been potentially helpful to him. *Id.* at 548–49, ¶¶ 18–20.

**¶19**        Though similar in some respects, *Hernandez* is readily distinguishable because the identification evidence in this case was overwhelming. First, R.W. ascertained and testified unequivocally that the pickup truck was occupied by only one person, the driver. Second, R.W. did not look at the driver for just a second or two, but physically removed him from the vehicle, spoke with him, sat with him for a brief period, and then looked back and saw him walking away. Third, within minutes of the accident, a police officer retrieved a cell phone from the pickup truck and R.W. identified Hopkins as the truck driver from a cell phone photograph. Fourth, Hopkins admitted that the brown jacket found inside the pickup truck belonged to him. Fifth, Hopkins' boots matched the boot prints tracking away from the pickup truck. Sixth, Hopkins admitted that he had access both to the pickup truck and its keys. Finally, Hopkins told the investigating officer that he had only a vague recollection of the events that happened the two days before his interrogation but admitted that he had been very drunk and awoke injured by the highway. Given these facts, and notwithstanding that Hopkins was wearing a black shirt when he was approached by the investigating officer rather than a red shirt as reported by R.W. on the evening of the accident, Hopkins failed to meet his burden of showing that the pickup truck, if preserved, could have had a tendency to produce exculpatory evidence.[4]   Although Hopkins also suggests that the pickup truck may have had mechanical problems before the accident, no evidence supports this contention and mere speculation does not warrant a *Willits* instruction. Therefore, the superior court did not abuse its discretion by denying Hopkins' request for a *Willits* instruction.

---

[4] Contrary to Hopkins' appellate argument, no witness testified to "a second man walking from the scene." Instead, a highway operations supervisor, employed by the Arizona Department of Transportation, testified that *the day after the accident*, he saw a person who resembled the individual in the cell phone photograph walking along the highway, and that person was not Hopkins.

**CONCLUSION**

¶20   For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA