NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SAMUEL CLAYTON PRESTON, *Appellant.*

No. 1 CA-CR 21-0138
FILED 4-26-2022

Appeal from the Superior Court in Maricopa County
No. CR2018-001000-001
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Jones Skelton & Hochuli PLC, Phoenix
By Lori L. Voepel, Elizabeth B.N. Garcia
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Vice Chief Judge David B. Gass joined.

**P A T O N**, Judge:

¶1        Samuel C. Preston appeals from his sexual abuse and child molestation convictions.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the verdicts.  *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1 n.1 (App. 2019).  Twelve-year-old K.F. lived with her parents directly across the street from Preston and his family.  K.F. was friends with Preston's niece and regularly spent time at his home.  One night, K.F. had a sleepover at Preston's house with his niece.  The two girls slept on the living room couch.

¶3        K.F. later testified that at around 2:00 a.m., Preston woke her up by touching her leg.  She testified that he climbed on top of her, forced her hand into his pants, and forced her to rub his penis.  K.F. described how Preston then forced his hand down her pants and rubbed, then digitally penetrated, her vagina.  After removing his hand from K.F.'s vagina, Preston grabbed and rubbed her left breast underneath her clothing.

¶4        Moments later, Preston's wife walked in and noticed an uncomfortable feeling in the room.  Preston told his wife that K.F. had asked him to "rub her," and he refused.  Preston's wife spoke with K.F. who said Preston assaulted her.  Preston and his wife went to K.F.'s house to speak with K.F.'s mother.  K.F.'s parents called the police early that morning, sometime after 6:00 a.m.

¶5        K.F. underwent a sexual assault exam at the hospital that afternoon.  The doctor swabbed her left breast, inner vagina, external genital area, palms, anus, and mouth for DNA.

¶6        Nearly twenty-four hours after the assault, police interviewed Preston, who denied K.F.'s allegations.  Pursuant to a valid warrant, police photographed Preston and collected a buccal swab from him.  Police did not collect additional DNA samples from Preston and did not arrest him that night.

¶7        K.F.'s sexual assault exam revealed Preston's DNA on the swabs from her left breast, and his Y-STR DNA profile from the swabs from her external genital area, which matched him and his paternally related male relatives.  Preston's DNA was not found on the swabs from K.F.'s hands, anus, or inner vagina.

**¶8** The State charged Preston with three counts of sexual conduct with a minor: masturbatory contact with penis (count 1), masturbatory contact with vulva (count 2), and digital vaginal penetration (count 3); one count of kidnapping (count 4); and one count of sexual abuse: sex conduct with breast (count 5).

**¶9** After a twelve-day trial, the jury acquitted Preston of two counts of sexual conduct with a minor (counts 1 and 3) and kidnapping (count 4). The jury convicted Preston of sexual abuse (count 5) but could not agree on the remaining sexual conduct charge (count 2) and convicted him of the lesser-included crime of child molestation. The court sentenced Preston to the presumptive seventeen-year term on count 2 and lifetime probation for count 5.

**¶10** Preston timely appealed from his convictions and sentences. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I. The superior court did not abuse its discretion by denying Preston's request for a *Willits* instruction.

**¶11** Preston contends the superior court committed reversible error by denying his request for a *Willits* instruction on the State's failure to collect "potentially exculpatory" DNA evidence from his clothes, hands, and genitals. *See State v. Willits*, 96 Ariz. 184 (1964). A *Willits* instruction permits jurors to draw an adverse inference against the State if they find the State "lost, destroyed, or failed to preserve evidence." Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 42 (5th ed. 2019). We review the superior court's denial of a *Willits* instruction for an abuse of discretion. *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 7 (2014) (citation omitted).

**¶12** "Generally, a defendant is entitled to a *Willits* instruction if: (1) the state failed to preserve obviously material and reasonably accessible evidence that could have had a tendency to exonerate the accused; and (2) there was resulting prejudice." *State v. Hernandez*, 250 Ariz. 28, 31, ¶ 10 (2020). Here, the superior court concluded that collecting additional DNA from Preston was not "obviously material" for *Willits* purposes. We agree. Evidence is "obviously material" when, at the time the State encounters the evidence, it either "relies on the evidence or knows the defendant will use [it] for his or her defense." *Id.* at 33, ¶ 16.

¶13         The State did not rely on the uncollected DNA evidence or know that Preston would use it in his defense.  When police interviewed Preston, they had already collected swabs from K.F., and Preston told police they "100% unequivocally" would not find his DNA on her.  Preston, therefore, indicated he intended to use the absence of *his* DNA *on the victim* in his defense, but not the absence of *the victim's* DNA *on him*.

¶14         Preston has also failed to show the uncollected evidence tended to exonerate him.  As the superior court correctly found, additional testing would have either revealed the victim's DNA on Preston, which would be inculpatory, or no DNA match, which would not be exculpatory. *See id.* at 33-34, ¶¶ 19-21 (holding that absence of DNA at an expected location does not tend to exonerate the defendant because, even if guilty, the defendant "may not have left identifiable DNA.") (citation omitted). Accordingly, the superior court did not abuse its discretion in denying Preston's request for a *Willits* instruction.

## II.         The superior court did not err by instructing the jury on the lesser-included offense of child molestation.

¶15         At the State's request, and without objection from Preston, the superior court instructed the jury that sexual conduct with a minor (counts 1-3) includes the lesser-included offense of child molestation.  Preston now argues that insufficient evidence supported a jury instruction on child molestation as a lesser-included offense of count 2 (masturbatory contact with vulva).  Because Preston failed to object at trial, we review for fundamental error and Preston bears the burden of proving that (1) the trial court erred, (2) the error was "fundamental," and (3) he suffered prejudice from the error.  *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

¶16         The superior court "must" instruct the jury on all lesser-included offenses of the charged offense if "any party" requests the instruction and the evidence supports the instruction.  *See* Ariz. R. Crim. P. 21.4(a)(1).  Sufficient evidence supports a lesser-included instruction if "the jury could rationally fail to find the distinguishing element of the greater offense." *State v. Detrich*, 178 Ariz. 380, 383 (1994).

¶17         Preston concedes that child molestation is a lesser-included offense of sexual conduct with a minor.  Because the State requested it, the court was required to give the instruction where the evidence supported a finding that Preston touched, fondled, or manipulated K.F.'s genitals without engaging in "masturbatory contact" with her vulva.  *Compare* A.R.S. §§ 13-1410(A), *and* 13-1401(A)(3)(a) (molestation requires proof of

"touching, fondling or manipulating of any part of the genitals"), *with* 13-1405(A), *and* 13-1401(A)(4) (sexual conduct requires proof of "masturbatory contact" with vulva).

**¶18**     K.F. testified that Preston "forced his hand down [her] pants" and "rub[bed] [her] vagina" for "a couple [of] seconds." The State's DNA expert also testified that K.F.'s external genital swabs contained Preston's DNA profile. The jury, therefore, could have reasonably found that the brief rubbing K.F. testified to, and the presence of Preston's DNA on her outer genitals, proved molestation that did not rise to masturbatory contact. *See State v. Smith*, 242 Ariz. 98, 106, ¶ 31 (App. 2017) (victim's testimony that defendant "rubbed" her genitals, and presence of DNA on victim's underwear was sufficient evidence to support a conviction for child molestation). Accordingly, sufficient evidence supported the molestation instruction.

> **III.     The superior court did not abuse its discretion by precluding testimony from two of K.F.'s juvenile friends about their sexual victimization.**

**¶19**     Preston argues the superior court abused its discretion by precluding testimony that two of K.F.'s juvenile friends talked to her about their sexual victimization. Preston contends the juvenile friends' testimony was relevant evidence that K.F. fabricated her accusation based on their accounts. We review the superior court's ruling for an abuse of discretion. *See State v. McGill*, 213 Ariz. 147, 156, ¶ 40 (2006) (citation omitted).

**¶20**     Evidence is relevant if it has "any tendency" to make a consequential fact "more or less probable." Ariz. R. Evid. 401. The superior court has "considerable discretion" to determine the relevance and admissibility of evidence. *State v. Smith*, 136 Ariz. 273, 276 (1983). The court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . confusing the issues, [or] misleading the jury." Ariz. R. Evid. 403. Irrelevant evidence is inadmissible. Ariz. R. Evid. 402.

**¶21**     Before trial, the State moved to preclude "testimonial evidence from [the] juvenile witnesses . . . related to their sexual assault cases." The State argued, among other things, that the evidence was not relevant and that the danger of confusing the issues and misleading the jury substantially outweighed its probative value. The State conceded that Preston could "certainly, cross examine [K.F.] to ask if she knew if either [of her juvenile friends] had been abused." The superior court granted the

State's motion and precluded Preston from introducing testimony about the juvenile friends' victimization.

¶22        The superior court ruled on this issue in a minute entry as part of the State's motion in limine.  Additionally, at trial, when Preston tried to elicit testimony regarding the juvenile friends' sexual victimization from Preston's wife, the court admonished Preston: "Don't do that.  The ruling was pretty clear several times.  I wouldn't do that, if I were you."

¶23        Preston asserts that the juvenile friends' testimony was "relevant to . . . address the presumption that [K.F.] could not have made such detailed allegations unless [he] abused her."  We disagree.  The juvenile friends' sexual assaults were unlike K.F.'s because one friend was orally sexually abused by her grandfather and the other was a victim of a juvenile-on-juvenile attack when she was nine years old.

¶24        Additionally, Preston could have cross-examined K.F. about whether she knew her juvenile friends had also been sexually abused.  Balancing this against the risk of confusing and misleading the jury into evaluating the credibility of the juvenile friends' sexual assaults rather than the evidence before them, we find the court did not abuse its discretion.  Moreover, any potential error was harmless.  *See State v. Dixon*, 226 Ariz. 545, 552, ¶ 32 (2011) (finding trial error harmless given the strength of the DNA evidence and circumstances implicating the defendant in the crime).

## IV.        We find no instances of fundamental prosecutorial error.

¶25        Preston next argues that the prosecutor committed various errors during closing argument—the cumulative effect of which denied him a fair trial.  Because Preston failed to object to the prosecutor's statements he now contends were error, we review for fundamental error.  *See Henderson*, 210 Ariz. at 567, ¶ 19.

¶26        We review claims of prosecutorial error by assessing each claim individually and, after determining whether any constitute error, we assess the "cumulative misconduct to conclude whether the total errors resulted in an unfair trial." *State v. Acuna Valenzuela*, 245 Ariz. 197, 216, ¶ 66 (2018) (citation and internal quotation marks omitted).  We will reverse only if (1) the prosecutor committed error and (2) a "reasonable likelihood" exists "that the misconduct could have affected the jury's verdict," thereby denying the defendant his due process right to a fair trial.  *Id.*  We address each of Preston's claims in turn.

### a. Burden-shifting

¶27 Preston argues that the prosecutor shifted the burden of proof regarding the absence of DNA by suggesting he had a duty to collect evidence in his defense. We disagree.

¶28 In his interview with police, Preston said he could not remember what underwear he wore during the alleged assault. At trial, however, Preston testified that when police interviewed him, he was still wearing the same underwear he wore during the incident. The prosecutor argued in closing argument that if Preston had been wearing the same underwear during the interview "as he suggested during his testimony, he would've turned it all over. He would've remembered and given [police] the underwear."

¶29 Preston's testimony contradicted his earlier statement to police that he did not remember what underwear he was wearing during the incident and opened the door to attacks on his credibility. *See State v. Alvarez*, 145 Ariz. 370, 373 (1985) (prosecutorial comments are proper when they are a fair rebuttal to areas opened by the defense).

¶30 Further, the parties and the court correctly informed the jury that the State bears the burden of proving every element of the offense and the "defendant is not required to produce evidence of any kind." Thus, even if error occurred, it was harmless. *See Acuna Valenzuela*, 245 Ariz. at 220, ¶ 91 (no prejudice from prosecutor's stray burden-shifting argument when the parties and court properly instructed the jury on the burden of proof); *see also State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160 (1987) ("To the extent that the prosecutor's statement in rebuttal closing argument may have implied that defendant had the burden of proof, however, the trial court's cautionary instruction to the jury was sufficient to cure any harm.").

### b. Lesser-included offense

¶31 Preston contends the prosecutor erred by arguing the jury could "find molestation of a child" on count 2 if they "hav[e] difficulty deliberating" on whether "the touch . . . rise[s] to the level of masturbatory conduct," and conclude instead it was "merely touching." For the reasons discussed above, the court correctly instructed the jury on the lesser-included offense of molestation. *See supra* at ¶ 21. Therefore, the prosecutor's argument was not an error but a true statement of law. *See State v. LeBlanc*, 186 Ariz. 437, 438 (1996) ("[T]he jury may deliberate on a lesser offense if it either (1) finds the defendant not guilty on the greater

charge, or (2) after reasonable efforts cannot agree whether to acquit or convict on that charge.").

### c. Precluded evidence

¶32 Preston claims the prosecutor violated the court's order precluding evidence about K.F.'s juvenile friends' sexual assaults. He cites the part of the prosecutor's closing argument where she argued it did "not make sense" that a twelve-year-old would not only make up the allegations against Preston but that she would "know about DNA, how to find invisible DNA" and plant the corroborating DNA evidence on her body. But the prosecutor's argument did not refer to K.F.'s imaginative ability or inspiration for fabricating the allegation, as Preston contends. Rather, it attacked the credibility of Preston's fabrication theory considering the DNA evidence against him. Thus, the argument did not violate the court's order because it did not venture into K.F.'s ability to make up the allegation without input from her juvenile friends.

### d. Vouching

¶33 Preston argues the prosecutor "vouched for the testimony of the state's witnesses." Prosecutorial vouching occurs either when the prosecutor (1) "places the prestige of the government behind its witness" or (2) "suggests that information not presented to the jury supports the witness's testimony." *State v. Johnson*, 247 Ariz. 166, 204, ¶ 157 (2019). At trial, Preston's mother-in-law testified that she "had not prepared" her niece to talk to the police alone. Referring to that testimony, the prosecutor argued that the jury should "ask [themselves] . . . [d]o you have to prepare someone to tell the truth? No, absolutely not." Later, the prosecutor asked the jury to consider "how the defendant's witnesses were given copies of their transcripts" before testifying, unlike the victim.

¶34 Preston contends these arguments constituted impermissible vouching. We disagree. The arguments properly questioned the substance of the witnesses' testimony. Neither statement placed the prestige of the government behind a witness or suggested that information not presented to the jury supported a witness's testimony. Instead, the prosecutor correctly asked the jury to make a credibility determination based on the evidence in the record. *See State v. Hill*, 174 Ariz. 313, 322 (1993) ("We have consistently held that wide latitude is to be given in closing arguments and that counsel may comment on the evidence and argue all reasonable inferences therefrom.").

¶35        In closing, the prosecutor also argued it was "almost impossible" for Preston to answer questions without his attorney "feeding him the entire question and answer." She explained that "[t]here were times that [she] objected as leading, not as many times as [she] could've, but [she] really wanted to draw [the jury's] attention to those points in time where the defendant and witnesses were being led to their answers." This was an improper comment because the prosecutor's non-objections were not in the record. *See State v. Johnson*, 247 Ariz. 166, 182, ¶ 24 (2019) ("Counsel may not, however, comment on matters which were not introduced in evidence") (citation omitted). The court, however, instructed the jury that a lawyer's argument is not evidence and to "[d]etermine the facts only from the . . . testimony of witnesses and the exhibits introduced in court." We presume the jury followed the court's instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). Accordingly, the prosecutor's improper statement did not constitute fundamental error.

### e. Cumulative error

¶36        Preston asks this court to reverse his convictions and sentences based on the cumulative effect of the prosecutor's errors. We consider whether "persistent and pervasive" error occurred and whether the "cumulative effect of the [errors] shows that the prosecutor intentionally engaged in improper conduct and did so with indifference, if not a specific intent, to prejudice the defendant." *State v. Morris*, 215 Ariz. 324, 339, ¶ 67 (2007) (citation and internal quotation marks omitted). Because we find only one instance of non-prejudicial error, we cannot conclude the prosecutor engaged in "persistent and pervasive" misconduct.

### V.    The court's COVID-19 protocols did not violate Preston's confrontation rights.

¶37        Preston claims that COVID-19 protocols during his trial violated his confrontation rights. *See* U.S. Const. amend. VI; *see* Ariz. Const. art. 2 § 24. He argues the superior court erred by erecting plexiglass barriers, using an audio-system to transmit sound, and requiring testifying witnesses to wear a transparent face shield. Because Preston failed to object at trial, we review for fundamental error. *See Henderson*, 210 Ariz. at 567, ¶ 19.

¶38        A defendant's right to confront witnesses may be satisfied absent a traditional face-to-face confrontation when: (1) "denial of such confrontation is necessary to further an important public policy," and (2)

"the reliability of the testimony is otherwise assured." *Maryland v. Craig*, 497 U.S. 836, 850 (1990) (citation omitted). The reliability of the testimony is assured when witnesses are physically present, testify under oath, are subject to cross-examination, and can be seen by the trier of fact. *Id.* at 846.

¶39 Even assuming the COVID-19 protocols denied Preston a "traditional face-to-face confrontation," which this record does not support, his confrontation rights were nevertheless satisfied. First, the protocols were necessary to combat the spread of COVID-19 per an Arizona Supreme Court order. *See* Ariz. Sup. Ct. Admin. Order No. 2020–75 (May 8, 2020). Second, the reliability of the witnesses' testimony was assured. Every witness testified under oath. Preston was present in the courtroom and cross-examined each witness who testified against him. The witnesses wore transparent face shields and could be seen by the jury, Preston, and the court. Accordingly, the superior court did not violate Preston's confrontation rights. *See State ex rel. Montgomery v. Padilla*, 237 Ariz. 263, 269, ¶ 19 (App. 2015) ("[W]hen a defendant is represented by counsel, his confrontation rights are satisfied if he is in the courtroom and can face the witness while his counsel conducts cross-examination.").

## VI. The superior court appropriately sentenced Preston to the presumptive term on count 2.

¶40 Finally, Preston argues the superior court improperly considered his rejected plea offer and lack of remorse when sentencing him to the presumptive term for child molestation (count 2). Generally, a court violates a defendant's privilege against self-incrimination when it considers his lack of remorse in sentencing. *See State v. Trujillo*, 227 Ariz. 314, 318, ¶ 14 (App. 2011). We review sentencing determinations for an abuse of discretion. *State v. Vermuele*, 226 Ariz. 399, 403, ¶ 15 (App. 2011).

¶41 At sentencing, the court asked about a plea the State offered to Preston carrying a sentence of lifetime probation. After hearing from both parties, the court told Preston that he could have avoided prison time by accepting the plea, but "that was never going to happen because you have no remorse." The court said Preston would have been eligible for probation if he had "accepted responsibility, but that's neither here nor there now."

¶42 The court then made its aggravation findings. It listed Preston's significant family support, lack of criminal history, and amenability to treatment as mitigating factors, and the significant impact on the victim as an aggravator. Balancing these factors, the court

determined "the aggravating and mitigating circumstances don't require anything other than the presumptive term."

¶**43**       To be sure, a better practice in sentencing is to not discuss the absence of remorse. *See State v. Hardwick*, 183 Ariz. 649, 656 (App. 1995) ("[I]t would be irrational or disingenuous" to expect a defendant "who maintains his innocence to express contrition or remorse. A convicted defendant's decision not to publicly admit guilt is irrelevant to a sentencing determination, and the trial court's use of this decision to aggravate a Defendant's sentence offends the Fifth Amendment privilege against self-incrimination."). Here, however, when the court listed the factors it weighed in mitigation and aggravation, it did not include lack of remorse. Insofar as the court improperly considered lack of remorse, it ultimately refrained from finding it to be an aggravating factor. On this record, therefore, it is clear that any error in sentencing was harmless. *See Trujillo*, 227 Ariz. at 318, ¶ 13 (we will uphold a sentencing determination when the record "clearly show[s] that the trial court would have reached the same result even without consideration of the factor.") (citation omitted).

## CONCLUSION

¶**44**       We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA