NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CLARENCE JAMES DEAN, *Appellant.*

No. 1 CA-CR 21-0259
FILED 4-28-2022

Appeal from the Superior Court in Maricopa County
No. CR2019-124292-001
The Honorable Laura Johnson Giaquinto, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Diane L. Hunt
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Peter B. Swann and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1        Clarence James Dean Jr. appeals his convictions for aggravated driving under the influence ("DUI") based on the superior court's refusal to give an adverse-inference instruction pursuant to *State v. Willits*, 96 Ariz. 184 (1964).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Dean's Dodge Charger rear-ended another vehicle, launching it into a wall.  A driver who witnessed the collision followed the Charger as it drove to a parking lot a block away.  The witness saw Dean exit the driver door to inspect the Charger for damage, and he asked Dean whether he was going back to check on the person he hit.  Dean said yes.  According to the witness, the Charger was never out of his sight from the time of the collision to when Dean emerged from the vehicle.

¶3        Dean got back into the Charger but then drove somewhat past the collision site, at which point a police officer pulled him over.  Officers observed that Dean's eyes were watery and bloodshot, and they smelled alcohol on him.  Dean submitted to field sobriety tests, which revealed signs of impairment.  Blood drawn from Dean about 70 minutes after the collision showed a blood alcohol concentration of 0.164 percent.  Dean's driver's license was both suspended and revoked.  He admitted to an officer that he rear-ended the other vehicle and was alone in the Charger.

¶4        The State charged Dean with two counts of aggravated DUI (impaired to the slightest degree and blood alcohol over 0.08 percent with a suspended or revoked license) and one count of leaving the scene of an accident resulting in vehicle damage.  At trial, Dean testified that a friend of his was driving the Charger at the time of the collision; the friend took off running without explanation after driving the Charger to the parking lot on the next block; and Dean then drove the Charger back to the scene of the accident.  Dean acknowledged on cross-examination that his testimony

conflicted with what he told police after the collision. The friend who Dean claimed was driving did not testify at trial.

**¶5**         A jury found Dean guilty of both aggravated DUI charges but found him not guilty of leaving the scene of an accident. The superior court sentenced him to concurrent terms of four months' imprisonment to be followed by three years of supervised probation.

**¶6**         We have jurisdiction over Dean's timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

**¶7**         The witness who followed the Charger after the collision was interviewed by a police officer who stated in his report that he had activated his body camera recorder. A log showing all body camera recordings uploaded in connection with the incident did not include a recording from the officer, however. The officer moved out of state and did not testify at Dean's trial.

**¶8**         If the State "fails to preserve obviously material and reasonably accessible evidence that could have had a tendency to exonerate the accused and prejudice results, the trial court must provide the jury a *Willits* instruction." *State v. Hernandez*, 250 Ariz. 28, 30, ¶ 1 (2020); *see also Willits*, 96 Ariz. at 191; *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 7 (2014). The instruction allows jurors to "draw an inference unfavorable to the State, which in itself may create a reasonable doubt as to the defendant's guilt." *Hernandez*, 250 Ariz. at 30, ¶ 1; *see also* Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 42 (4th ed. 2016). "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *Glissendorf*, 235 Ariz. at 150, ¶ 8 (citations omitted).

**¶9**         Dean requested a *Willits* instruction pertaining to the officer's body camera recording. He argued that evidence showed the State lost or destroyed the recording and its absence impaired Dean's defense by preventing him from using the recording to impeach the witness's testimony. The State opposed giving the instruction, asserting that (1) its investigation of the issue suggested the officer had not, in fact, activated his body camera and (2) even if he had, Dean suffered no prejudice from the missing recording because he was able to cross-examine the witness at trial.

**¶10** The superior court denied Dean's request for a *Willits* instruction—which Dean now argues constitutes reversible error. We review the court's ruling for an abuse of discretion, *Glissendorf*, 235 Ariz. at 150, ¶ 7, and will not upset its decision "if the result was legally correct for any reason," *State v. Perez*, 141 Ariz. 459, 464 (1984) (citations omitted).

**¶11** Assuming the State did, in fact, lose or destroy a recording of a law enforcement interview with the witness, Dean was not entitled to a *Willits* instruction because the value of the recording to the defense was speculative. *See Glissendorf*, 235 Ariz. at 150, ¶ 9 ("To show that evidence had a 'tendency to exonerate,' the defendant must do more than simply speculate about how the evidence might have been helpful." (citations omitted)). Dean argues the missing recording might have reinforced his testimony by providing evidence that the witness reported seeing a second person in the parking lot with Dean. The argument is hypothetical on this record. The witness's trial testimony was consistent with his 911 call, the timing of events—which showed that Dean returned to the scene of the collision within a couple of minutes after it occurred—and Dean's own statements on the night of the collision. Defense counsel did not elicit any testimony from the witness suggesting that his account at trial varied in any respect from statements the witness made during his interview with law enforcement. Dean's wishful thinking, without more, does not establish that the missing recording could have had a tendency to exonerate him. *See Perez*, 141 Ariz. at 464 (finding no prejudice from the State's destruction of a videotape capturing the charged robbery where there was no evidence to suggest that the videotape would have provided material that could be used to impeach the victim's testimony).

**¶12** Even if the superior court's refusal to give a *Willits* instruction were erroneous, reversal would not be warranted because the State has established "beyond a reasonable doubt that the error did not contribute to or affect the verdict[s]." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). Dean's DUI convictions were supported by overwhelming evidence as to which the witness's testimony was unnecessary and largely irrelevant. Dean admitted he drove the Charger back to the collision site, and the State correctly informed jurors that his admission was enough to establish the driving element of the DUI charges—even if someone else were driving at the time of the collision. *See* A.R.S. § 28-1381(A)(1)-(2) ("It is unlawful for a person to *drive or be in actual physical control of a vehicle . . .* [i]f the person is impaired to the slightest degree [or] if the person has an alcohol concentration of 0.08 or more . . . ." (emphasis added)). Dean's blood alcohol level, performance on field sobriety tests, and motor vehicle records

provided strong evidence of his impaired state and lack of a valid license. On this record, the absence of a *Willits* instruction was harmless.

**CONCLUSION**

¶13        Dean's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA